1  Mark D. Peterson (State Bar #126174)
   Amy Howse (State Bar #252922)
2  CATES PETERSON LLP
   100 Newport Place, Suite 230
3  Newport Beach, CA 92660
   Telephone: 949.724.1180
4  Facsimile: 949.724.1190

5
   Adam C. Sherman (SB# 224979)
6  Email:  acsherman@vorys.com
   VORYS, SATER, SEYMOUR AND PEASE LLP
7  301 East Fourth Street
   Suite 3500, Great American Tower
8  Cincinnati, Ohio  45202
   Telephone:  (513) 723-4680
9  Facsimile:  (513) 852-8468

10
   Attorneys for Plaintiff
11 ZO SKIN HEALTH, INC.

12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16 ZO SKIN HEALTH, INC., a corporation,      Case No.

17                            Plaintiff,      **COMPLAINT FOR DAMAGES,
                                              INJUNCTIVE AND OTHER RELIEF, FOR**
18 vs.                                        **VIOLATION OF 15 USC § 1114; 15 USC
                                              § 1125(a); 15 USC § 1125(c); BREACH OF**
19 ANDREW HAWRYCH M.D., P.A.                  **CONTRACT; AND RELATED CLAIMS**
   c/o Hawrych, Andrew M.D.
20 1205 Piper Boulevard, Suite 204           **DEMAND FOR JURY TRIAL**
   Naples, FL 34110 and,
21
   ANDREW HAWRYCH, M.D.
22 500 Portside Dr.
   Naples, FL 34103
23

24
                            Defendants.
25

26        Plaintiff, ZO Skin Health, Inc. ("ZO Skin Health"), respectfully states the following for its

27 Complaint against defendants Andrew Hawrych M.D., P.A. ("Defendant Hawrych Medical

28 Practice") and Dr. Andrew Hawrych ("Defendant Hawrych") for trademark infringement in

violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125, unfair and deceptive trade practices, state trademark infringement, Unfair Competition in Violation of Cal. Bus. and Prof. Code § 17200, and breach of contract.  Defendant Hawrych Medical Practice and Defendant Hawrych, also d/b/a "New Skin Treats" and "Beauty Dreams" on the website www.amazon.com and "dermedik" on the website www.ebay.com, are hereinafter collectively referred to as "Defendants."

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff ZO Skin Health is a corporation, organized under the existing laws of the State of California, with its principal place of business located in Irvine, California.

2.      Upon information and belief, Defendant Hawrych Medical Practice is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Naples, Florida.

3.      Upon information and belief, Defendant Hawrych is a natural person conducting business at 1205 Piper Blvd., Suite 204, Naples, Florida 34110.  Dr. Hawrych is licensed to practice medicine by the State of Florida.

4.      Defendants sell ZO Skin Health products on the Internet via several different websites including, but not limited to, www.amazon.com ("Amazon") and www.ebay.com ("eBay") in violation of ZO Skin Health's trademarks and their contract with ZO Skin Health.

5.      The Court has federal question jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1331 because this is a civil action that arises under the Constitution and laws of the United States; the provisions of 28 U.S.C. § 1338 because this is a civil action arising under an Act of Congress relating to trademarks; and the provisions of 15 U.S.C. § 1114 and 15 U.S.C. § 1125.

6.      In addition, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because this lawsuit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      The Court has supplemental jurisdiction over the state-law claims of ZO Skin Health pursuant to the provisions of 28 U.S.C. § 1367.

8.      The Court has personal jurisdiction over the parties.  Defendants have consented to personal jurisdiction in this Court pursuant to a valid forum selection clause contained in a reasonable and fair contract executed between the parties (the "Agreement Regarding Permissible Sales, Pricing and Promotional Materials").  This clause provides that:  "Any dispute arising from this contractual relationship shall be governed by California law, without regard to the application of California's conflicts of laws rules, and shall be decided solely and exclusively by state or federal courts located in Orange County, California."

9.      Venue is proper in this District and this Division pursuant to a valid forum selection and choice of law clause in the parties' contract, as set forth above, and under 28 U.S.C. § 1391(b)(3).

## FACTUAL ALLEGATIONS
### ZO Skin Health & Its Trademarks

10.     ZO Skin Health develops and sells high-end skin care products by utilizing cutting-edge science and the extensive clinical experience of its medical director, Dr. Zein Obagi.

11.     ZO Skin Health devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name, and reputation.  Each product is packaged in a manner in which the ZO Skin Health brand is easily and readily identifiable.  Furthermore, each product is handled with the utmost care and precision during the packaging and transport process. In the highly competitive skin care market, quality is a fundamental part of the consumer's decision to purchase a product.

12.     ZO Skin Health has registered several trademarks with the United States Patent and Trademark Office with respect to its brand and products, including "ZO"®, registration no. 3443712; "Offects"®, registration no. 3818858; "Ossential"®, registration no. 3593734; "Ommerse"®, registration no. 3544801; "Oclipse"®, registration no. 3774720; "Olluminate"®, registration no. 3534953; "Oraser"®,  registration no. 3534951; "Balatone"®,  registration no. 4369426; "Brightenex"®,  registration no. 4369427; "Cebatrol"®,  registration no. 4700117; "Glycogent"®,  registration no. 4314219; "Melamin"®,  registration no. 4369429; "Melamix"®, registration no. 4403996; "Normacleanse"®, registration no. 4369425; "Oilacleanse"®,  registration

no. 4314218; "Retamax"®, registration no. 4369428; "Brightamax"®, registration no. 41717108, "Restoracalm"®, registration no. 4717109; "Invisapeel"®, registration no. 4544128, "Aknebright"®, registration no. 4732147, "Hydrafirm"®, registration no. 4735210, and "ZO Medical"®, registration no. 4318377 (collectively, the "ZO Trademarks").

13.     The registration for each of the ZO Trademarks is valid, subsisting and in full force and effect.  Further, pursuant to 15 U.S.C. § 1065, the ZO Trademarks serve as conclusive evidence of  ZO Skin Health's ownership of the marks and of its exclusive rights to use the marks in commerce and in connection with the sale and distribution of ZO Skin Health's products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

14.     ZO Skin Health actively uses and markets all of the ZO Trademarks in commerce.

15.     Due to the quality and exclusive distribution of ZO Skin Health's products, and because ZO Skin Health is uniquely recognized as the source of high quality products, the ZO Trademarks have enormous value.

### ZO Skin Health Production, Distribution, and Quality Control

16.     Due to the professional grade of its products, ZO Skin Health exercises strict quality control over the production and distribution of its skin care products.  Each product contains a universal product code ("UPC"), batch code, and date affixed to the packaging or container of the product, which play an important role in fighting counterfeits.  Because of the high expense involved in placing a unique number on each unit, counterfeiters will generally either omit such information from their packaging or repeatedly use sets of fake numbers on a series of counterfeit units.  The UPC system, therefore, facilitates the spotting of counterfeit units by allowing an investigator to make a determination based on the absence of a UPC on the packaging or the use of a fake UPC number.

17.      The UPC, batch code, and date also assist ZO Skin Health's ability to protect its brand against quality slippage in genuine authorized products.  When a quality problem surfaces, the UPC identifies the place of the manufacturer, the batch which produced the defect, and other identifying information.  This information can help ZO Skin Health to recall those distributed products that may share the defect and to prevent further recurrence of the defect.   In light of the

possibility for an adverse reaction with respect to any topical skin product, it is critical for ZO Skin Health to have the ability to take measures to control the quality and integrity of its products, and the value of its trademarks.

18.     ZO Skin Health maintains its quality controls by strictly adhering to its policy of attaching a UPC, batch code, and date to each of the products it sells; working with its manufacturer to ensure that a UPC, batch code, and date are applied to each of the products; and conducting a regular review of the products in the market to ensure that information is not being removed from its products.

19.     ZO Skin Health also provides its customers that purchase ZO Skin Health products through its legitimate chains of distribution with warranties to ensure the safe and effective use of ZO Skin Health products.

20.     In order to monitor the distribution of its products, ZO Skin Health also periodically affixes undetectable invisible ink marks to its products, displaying the invoice number under which the products were purchased.

21.     ZO Skin Health also maintains its quality controls by limiting the sale of its products to authorized distributors, physicians, and a limited number of other entities authorized to sell ZO Skin Health products.

22.     ZO Skin Health maintains its exclusive relationship with authorized distributors because the products it produces are medical grade and used to treat skin diseases and serious skin conditions.

23.     ZO Skin Health products contain potent chemicals, such as retinoic acid, to stabilize, care for, and cure various skin diseases and ailments.  In order for them to be effective, and most importantly safe, the products must be administered by healthcare professionals and unique protocols to correct medical skin conditions.  The products developed by ZO Skin Health are designed to work together for specific skin conditions.

24.     ZO Skin Health's authorized distributors receive and review a series of manuals that contain the protocols for administering ZO Skin Health products, and only then instruct the patients

1  on how the products should be used, when they should be used, and under what circumstances to
2  apply treatment.

3      25.    For instance, ZO Skin Health's Pigmentation System for treatment of
4  hyperpigmentation and melasma includes six steps and four optional steps involving ten different
5  products with specific directions for the use of each product.  In order to properly treat
6  hyperpigmentation, and avoid unwanted and unplanned side effects, an authorized distributor must
7  follow ZO Skin Health's quality controls and protocols and must instruct the patient to precisely
8  follow each step.

9      26.    Further, the strength of ZO Skin Health's Pigmentation System can be controlled by
10  adjusting the amount of products used by the patient and the frequency of their application.

11      27.    The ZO Medical products include, but are not limited to, BALATONE® Calming
12  Toner pH Balancer, BRIGHTENEX® Skin Brightener & Correcting Crème Non-Hydroquinone,
13  CEBATROL® Oil Control Pads, GLYCOGENT® Exfoliation Accelerator, MELAMIN® Skin
14  Bleaching & Correcting Crème, MELAMIX® Skin Lightener & Blending Crème,
15  NORMACLEANSE® Cleanser for Normal to Dry Skin, OILACLEANSE® Cleanser for Normal to
16  Oily Skin, RETAMAX® Active Vitamin A Micro Emulsion, INVISAPEEL® Intensive
17  Resurfacing Peel, TRETINOIN Tretinoin USP, HYDRAFIRM® Eye Brightening Repair Crème, C-
18  BRIGHT® 10% Vitamin C Serum, AKNEBRIGHT® Acne Spot & Pigment Treatment, and ZO®
19  CONTROLLED DEPTH PEEL®.

20      28.    Medical supervision and instruction regarding the use of these products is
21  fundamental to the quality of these products.  For instance, within this line of products, ZO Skin
22  Health has two prescription products – Melamin and Melamix – that contain hydroquinone, a potent
23  chemical that typically requires a prescription.  Because Melamin and Melamix contain
24  hydroquinone, the quality of these products depends on the dosage amount for these products being
25  properly prescribed and conveyed by a licensed physician.  The quality of Melamin and Melamix
26  also depends on licensed physicians evaluating whether the patient has any allergies that could
27  affect the impact of these products, whether the patient is of sufficient age to use these products, and
28  whether the use of the product is safe and appropriate for the patient.  Because all of these factors

are important to the quality of the products being offered by ZO Skin Health, ZO Skin Health goes to great effort to ensure that these products are only sold to patients by those who are trained to appropriately prescribe and monitor the use of these products.   Any interference with these processes materially alters the quality of the products, and thus, not only infringes upon ZO Skin Health's trademarks, but puts the consumers at great risk.

29.     For these reasons, during the application process, authorized distributors are provided documents which make clear that ZO Skin Health prohibits the resale of its products on the Internet.

30.     In addition, each ZO Skin Health New Account Application specifically states that its distributors are prohibited from: selling the Products on or through the Internet in any manner, selling to anyone a quantity of the Products greater than that generally purchased by an individual for personal use, and selling the Products to anyone who it is reasonably believed intends to re-sell the Products to other parties.

31.     ZO Skin Health requires that these order forms be submitted by email or facsimile.

**Defendants Become an Authorized Distributor of ZO Skin Health Products**

32.     On or about March 23, 2014, Defendants executed and delivered to ZO Skin Health a New Account Application, along with a credit card authorization form, the State of Florida Department of Health Division of Medical Quality Assurance form, and the State of Florida Annual Resale Certificate for Tax Sales (collectively, the "Distribution Agreement").   A true and accurate copy of the Distribution Agreement is attached hereto as Exhibit 1.

33.     A provision of the Distribution Agreement, titled "Agreement Regarding Permissible Sales, Pricing and Promotional Materials," contained a forum selection clause stating that: "Any dispute arising from this contractual relationship shall be governed by California law, without regard to the application of California's conflicts of laws rules, and shall be decided solely and exclusively by state or federal courts located in Orange County, California."

34.     In addition, pursuant to the Distribution Agreement, Defendants agreed that they were prohibited "(1) from selling [ZO Skin Health] Products on or through the Internet in any manner, (2) from selling to anyone a quantity of the [ZO Skin Health] Products greater than that

1  generally purchased by an individual for personal use, and (3) from selling the [ZO Skin Health]

2  Products to anyone who I reasonably believe intends to re-sell the [ZO Skin Health] Products to

3  other parties."

4      35.     Beginning in or around March 2014, Defendants purchased numerous individual ZO

5  Skin Health products, including ZO Medical products, pursuant to the Distribution Agreement and

6  subject to the terms thereof.

7                    **ZO Skin Health Polices the Sale of Its Products on the Internet**

8      36.     Due in part to the egregious conduct of Defendants and others, and in light of the

9  significant problem ZO Skin Health has encountered with respect to the unauthorized sale of its

10 products on the Internet, ZO Skin Health polices the sale of its products on the Internet.

11     37.     Specifically, ZO Skin Health marks selected products from several orders with

12 invisible ink in order to track and identify the products in the order, and also purchases products

13 from online retailers with a significant Internet presence to locate the source of the products.

14     38.     In addition, ZO Skin Health began purchasing products from Amazon and eBay

15 storefronts in an effort to identify authorized distributors unlawfully selling its products on the

16 Internet, in violation of ZO Skin Health's trademarks and its distribution agreements.

17     39.     The storefronts "New Skin Treats" and "Beauty Dreams" on the website Amazon

18 and "dermedik" on the website eBay, each owned and controlled by Defendants, have engaged in

19 the sale of purported ZO Skin Health products on the Internet, in breach of ZO Skin Health's

20 Distribution Agreements.

21     40.     The storefront "New Skin Treats" on the website Amazon has engaged in the sale of

22 purported ZO Skin Health Products on the Internet, including ZO Medical products (Glycogent,

23 Hydrafirm, and Retamax).  These products were sold without the supervision or instruction of a

24 licensed physician, in breach ZO Skin Health's Distribution Agreements.

25     41.     The storefront "Beauty Dreams" on the website Amazon has also engaged in the sale

26 of purported ZO Skin Health Products on the Internet.   These products were sold without the

27 supervision or instruction of a licensed physician in breach of ZO Skin Health's Distribution

28 Agreements.

42.     The storefront "dermedik" on the website eBay has engaged in the sale of purported ZO Skin Health Products on the Internet, including ZO Medical products (Invisapeel, AkneBright, Glycogent, Balatone, and Retamax).   These products were sold without the supervision or instruction of a licensed physician in breach of ZO Skin Health's Distribution Agreements.

43.     Beginning in October 2014, and again in December 2014, April 2015, May 2015, and August 2015, ZO Skin Health purchased several purported ZO Skin Health products from the storefronts "New Skin Treats" and "Beauty Dreams" on the website Amazon and "dermedik" on the website eBay in an effort to identify the authorized distributor breaching its agreement with ZO Skin Health.

44.     Upon receipt of the purchased purported ZO Skin Health products from the storefronts "New Skin Treats" and "Beauty Dreams" on the website Amazon and "dermedik" on the website eBay, ZO Skin Health discovered that each of the purchased products had been shipped from a UPS Store located at 13650 Fiddlesticks Blvd., Ft. Myers, Florida.  The UPS Box associated with each shipment was 202-265.   Each product was also accompanied with nearly identical receipts.

45.     Moreover, some of these products did not have the box or accompanying UPC code that ZO Skin Health employs to maintain the quality controls for its products.

46.     On information and belief, Mailbox 202-265, at 13650 Fiddlesticks Blvd., Ft. Myers, Florida, was at all relevant times controlled by Defendants in order to facilitate their business of selling skin care products online.

47.     Defendants purchased over 1,500 products from ZO Skin Health, and, on information and belief, all or a substantial portion of those products, were sold on the Internet, or by other means, in violation of the Distribution Agreement.

**Defendants' Illegal Sale and Alteration of ZO Skin Health Products**

48.     Defendants, without authorization from ZO Skin Health, sold products bearing the ZO Trademarks on the Internet through the websites Amazon and eBay.

49.      Indeed, Defendants sold ZO Skin Health products to or through the Amazon and eBay storefronts that were not in fact genuine ZO Skin Health products because the ZO Skin Health

1  products were sold without any of ZO Skin Health's skin care program instructions, any physician

2  evaluation or monitoring, or any of the warranties offered by ZO Skin Health through its legitimate

3  chains of distribution.

4       50.    As a result, by their unauthorized use of the ZO Trademarks, Defendants were

5  misleading consumers into believing they were purchasing products with the same quality controls

6  as ZO Skin Health products; however, in reality, the products that Defendants were selling with the

7  ZO Trademarks were materially different from genuine and authentic ZO Skin Health products.

8  Indeed, some of these products were sold without any of ZO Skin Health's skin care program

9  instructions, any physician evaluation or monitoring, any of the warranties offered by ZO Skin

10 Health through its legitimate chains of distribution, and, in some instances, the products were not

11 shipped in ZO Skin Health's custom packaging or with their UPCs.

12          **Defendants' Actions Could Cause Significant Harm to the Public**

13      51.    As stated above, ZO Skin Health products contain potent chemicals and are designed

14 to be used under the supervision of a treating physician.   Without that supervision, there is a

15 significant potential for harm to the user.  Certain combinations of products should be used together

16 to treat certain skin conditions, and the improper usage of the products or improper dosage can

17 cause undesirable side effects, including physical harm to the user.  Moreover, the sale of these

18 purported ZO products without the quality control markers that ZO uses might cause the public to

19 purchase products which are not authentic ZO products, which have been recalled, or which have

20 expired, without providing ZO or the public with an adequate way to determine the source and

21 current quality of the products.  Defendants' actions in this regard are placing the public at risk of

22 substantial harm.

23          **ZO Skin Health Has Suffered Significant Harm**

24      52.    ZO Skin Health has suffered significant monetary damages from Defendants' actions

25 including, but not limited to, loss of sales for ZO Skin Health products, trademark infringement,

26 loss of goodwill, and damage to its existing and potential business relations.

27      53.    ZO Skin Health has suffered, and will continue to suffer, irreparable harm to its

28 quality control procedures, the ZO Trademarks, and its business relationships with legitimate

1  distributors.  As a result of Defendants' actions, ZO Skin Health's legitimate distributors are more

2  likely to terminate their agreements.

3      54.    In addition, if members of the public purchase counterfeit products, expired

4  products, or products that have been recalled, or if they use the products without physician

5  supervision and are harmed by them, ZO's reputation will be damaged.  As a result of Defendants'

6  actions in this regard, ZO Skin Health has suffered, and will continue to suffer, irreparable harm to

7  its quality control procedures, the ZO Trademarks, and its goodwill.

8      55.    Defendants' Distribution Agreement contains a liquidated damages provision stating:

9  "I agree that should I, or any of my employees or affiliates, ever engage in the sale of any of the

10  Products in any manner that is prohibited by, not authorized by, or not in compliance with, this

11  Agreement or with the Sales Terms and Policies, I agree to pay to ZO Skin Health one thousand

12  United States dollars ($1,000.00) for each unit of the Products in each instance of a prohibited,

13  unauthorized and/or noncompliant sale."

14      56.    Defendants' conduct was knowing, intentional, willful, malicious, wanton, and

15  contrary to law.

16      57.    ZO Skin Health is entitled to injunctive relief because Defendants will continue to

17  unlawfully sell ZO Skin Health products in violation of its Distribution Agreements; sell ZO Skin

18  Health products outside regular distribution channels compromising quality control; sell products

19  with altered, removed, concealed, and effaced UPCs with the ZO Trademarks; cause irreparable

20  harm to ZO Skin Health's goodwill; and cause ZO Skin Health and its distributors to lose business.

21

22                **FIRST CAUSE OF ACTION**
                  **Trademark Infringement**
23                  **15 U.S.C. § 1114**

24      58.    ZO Skin Health re-alleges the allegations set forth in paragraphs 1-57 above, and

25  incorporates each allegation herein by reference.

26      59.    The ZO Trademarks are valid and subsisting trademarks in full force and effect.

27      60.    Defendants willfully and knowingly used the ZO Trademarks in commerce with the

28  sale of products on the Internet without the consent of ZO Skin Health.

61.     The use of the ZO Trademarks in connection with the unauthorized sale of products on the Internet by Defendants was likely to cause confusion, cause mistake, or deceive because it suggested that the products offered for sale by Defendants were the same as the products legitimately bearing the ZO Trademarks, and originated from, or were sponsored, authorized, or otherwise connected with ZO Skin Health.

62.     The products sold by Defendants were not, in fact, genuine and authentic ZO Skin Health products.  The products sold by Defendants were materially different because, among other reasons, some of the UPCs had been concealed and/or removed on the products, and products were sold without any of ZO Skin Health's skin care program instructions, any physician evaluation or monitoring, or any of the warranties offered by ZO Skin Health through its legitimate chains of distribution.

63.     Defendants' unauthorized sale of products bearing the ZO Trademarks infringed on the ZO Trademarks.

64.     Defendants' unauthorized use of the ZO Trademarks infringed on the ZO Trademarks.

65.     Defendants' unauthorized use of the ZO Trademarks has materially damaged the value of the ZO Trademarks, caused significant damages to ZO Skin Health's business relations, infringed on ZO Skin Health's trademarks, and put the public at risk of potential harm.

66.     As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales for the products sold by Defendants, trademark infringement, and damage to its existing and potential business relations.

67.     Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

**SECOND CAUSE OF ACTION**
**False Advertising - Defendants**
**15 U.S.C. § 1125(a)**

68.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-57 above, and incorporates each allegation herein by reference.

69.    The ZO Trademarks are valid and subsisting trademarks in full force and effect.

70.    Defendants willfully and knowingly used the ZO Trademarks in commerce with the sale and advertising of products without the consent of ZO Skin Health.

71.    The use of the ZO Trademarks in connection with the unauthorized sale and advertising of products by Defendants—including, without limitation, listings on eBay and Amazon—was likely to cause confusion, cause mistake, or deceive because it falsely suggested that the products offered for sale by Defendants were genuine and authentic ZO Skin Health products, and originated from, or were sponsored, authorized, or otherwise connected with ZO Skin Health.

72.    Defendants' false statements that the products they offered for sale were authentic and genuine ZO Skin Health products were material, misleading, and deceptive.

73.    Defendants' unauthorized sale of products bearing the ZO Trademarks, and unauthorized use of the ZO Trademarks in advertising, infringed the ZO Trademarks.

74.    Defendants' unauthorized use of the ZO Trademarks infringed on the ZO Trademarks.

75.    As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales for products, lost profits, trademark infringement, and damage to its reputation and existing and potential business relations.

76.    Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

**THIRD CAUSE OF ACTION**
**Unfair Competition - Defendants**
**15 U.S.C. § 1125(a)**

77.    ZO Skin Health re-alleges the allegations set forth in paragraphs 1-57 above, and incorporates each allegation herein by reference.

78.    The ZO Trademarks are valid and subsisting trademarks in full force and effect.

79.    Defendants willfully and knowingly used the ZO Trademarks in commerce with the sale and advertising of products without the consent of ZO Skin Health.

80. The use of the ZO Trademarks in connection with the unauthorized sale and advertising of products by Defendants was likely to cause confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of ZO Skin Health products because it suggested that the products offered for sale by Defendants originated from, or were sponsored, authorized, or otherwise connected with ZO Skin Health.

81. Defendants' unauthorized sale of products bearing ZO Trademarks, and unauthorized use of ZO Trademarks in advertising, materially damaged the value of the ZO Trademarks and caused significant damages to ZO Skin Health's business relations.

82. Defendants' unauthorized sale of products bearing ZO Trademarks and unauthorized use of ZO Trademarks in advertising infringed on the ZO Trademarks.

83. As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

84. Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

## FOURTH CAUSE OF ACTION
### Trademark Dilution
### 15 U.S.C. § 1125(c)

85. ZO Skin Health re-alleges the allegations set forth in paragraphs 1-57 above, and incorporates each allegation herein by reference.

86. The ZO Trademarks are valid and subsisting trademarks in full force and effect.

87. ZO Skin Health is the owner of the ZO Trademarks, which are distinctive and widely recognized marks by the consuming public. ZO Skin Health products are sold and purchased at major outlets domestically and internationally, as well as prescribed and recommended by physicians in the skin care industry.

88. ZO Skin Health is widely recognized as the designated source of goods bearing the ZO Trademarks.

COMPLAINT

89.    Defendants' willful use of the ZO Trademarks in connection with the unauthorized and illegal sale of their products diluted the ZO Trademarks because the products sold by Defendants were not, in fact, genuine and authentic ZO Skin Health products.

90.    As a result of Defendants' unlawful actions, the reputation of the ZO Trademarks was harmed and ZO Skin Health suffered immediate and irreparable injury.

91.    Further, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

92.    Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

### FIFTH CAUSE OF ACTION
### Breach of Contract

93.    ZO Skin Health re-alleges the allegations set forth in paragraphs 1-57 above, and incorporates each allegation herein by reference.

94.    ZO Skin Health and Defendants executed a written contract (the Distribution Agreement) which specified that Defendants were prohibited from selling ZO Skin Health products on or through the Internet in any manner, from selling to anyone a quantity of ZO Skin Health products greater than that generally purchased by an individual for personal use, and from selling ZO Skin Health products to anyone who they reasonably believe intends to re-sell the ZO Skin Health products to other parties.

95.    ZO Skin Health did all, or substantially all, of the significant things that the Distribution Agreement required it to do or was excused from doing those things.

96.    All conditions required by the Distribution Agreement for Defendants' performance had occurred.

97.    Defendants breached their Distribution Agreement when they sold ZO Skin Health products on or through the Internet, sold to a party a quantity of ZO Skin Health products greater than that generally purchased by an individual for personal use, or sold ZO Skin Health products to a party he believed intended to re-sell the ZO Skin Health products.

98.     In doing so, Defendants triggered the liquidated damages provision of the Distribution Agreement, whereby Defendants agreed to pay $1,000 to ZO Skin Health "for each unit of the Products in each instance of a prohibited, unauthorized and/or noncompliant sale."

99.     As a direct and proximate result of the material breach of the Distribution Agreement by Defendants, ZO Skin Health has sustained general, exemplary, liquidated, and incidental damages in an amount presently unknown.

**SIXTH CAUSE OF ACTION**
**State Trademark Infringement**

100.    ZO Skin Health re-alleges the allegations set forth in paragraphs 1-57 above, and incorporates each allegation herein by reference.

101.    The ZO Trademarks are valid and subsisting trademarks in full force and effect.

102.    ZO Skin Health is the owner of the ZO Trademarks, which are distinctive and widely recognized marks by the consuming public.

103.    ZO Skin Health is widely recognized as the designated source of goods bearing the ZO Trademarks.

104.     Defendants' knowing and willful use of the ZO Trademarks in connection with the unauthorized and illegal sale of their products without ZO Skin Health's consent—and by selling ZO Skin Health products that were materially different because, among other reasons, the products sold by Defendants did not have the same quality control procedures as authentic ZO Skin Health products and consumers did not receive the warranties that ZO Skin Health offers its customers through authorized chains of distribution—infringed on the ZO Trademarks.

105.    The ZO Skin Health products sold by Defendants were not, in fact, genuine and authentic ZO Skin Health products.

106.    As a result of Defendants' unlawful actions, the reputation of the ZO Trademarks was harmed and ZO Skin Health suffered immediate and irreparable injury.

107.    Further, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

## SEVENTH CAUSE OF ACTION
### Violation of Business & Professions Code §§ 17200, *et seq.*

108.    ZO Skin Health re-alleges the allegations set forth in paragraphs 1-57 above.

109.    Defendants' obtaining of ZO Skin Health's product through unlawful means and subsequent distribution or sale of the product constitutes an unfair and/or fraudulent business practice, as described in California Business & Professions Code §§ 17200 *et seq.* as they are likely to deceive and mislead the public.

110.    Defendants' acts of unfair competition have caused and will continue to cause ZO Skin Health irreparable harm.  ZO Skin Health has no adequate remedy at law to Defendants' unfair competition.

111.    ZO Skin Health is entitled to judgment enjoining and restraining Defendants from engaging in further acts of infringement and unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, ZO Skin Health prays for relief and judgment as follows:

A.    Judgment in favor of ZO Skin Health and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, punitive damages, liquidated damages, and pre-judgment and post-judgment interest, as permitted by law;

B.    Preliminary and permanent injunctions that issue enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

    i)    Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, any and all ZO Skin Health products, as well as any products bearing any of the ZO Trademarks including, but not limited to, ZO, Offects, Ossential, Ommerse, Oclipse, Olluminate, Oraser, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, Brightamax, Restoraclaim, Invisapeel, Aknebright, Hydrafirm, and ZO Medical,

    ii)   Prohibiting the Enjoined Parties from using any of the ZO Trademarks including, but not limited to, ZO, Offects, Ossential, Ommerse, Oclipse,

Olluminate, Oraser, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, Brightamax, Restoraclaim, Invisapeel, Aknebright, Hydrafirm, and ZO Medical in any manner, including advertising on the Internet,

iii) Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all ZO Skin Health products as well as any products bearing any of the ZO Trademarks including, but not limited to, ZO, Offects, Ossential, Ommerse, Oclipse, Olluminate, Oraser, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, Brightamax, Restoraclaim, Invisapeel, Aknebright, Hydrafirm, and ZO Medical,

iv) Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of ZO Skin Health's products, or any of the ZO Trademarks including, but not limited to, ZO, Offects, Ossential, Ommerse, Oclipse, Olluminate, Oraser, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, Brightamax, Restoraclaim, Invisapeel, Aknebright, Hydrafirm, and ZO Medical,

v) Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the ZO Trademarks which associate ZO Skin Health's products or the ZO Trademarks with the Enjoined Parties or the Enjoined Parties' website,

vi) Requiring the Enjoined Parties to take all action to remove the ZO Trademarks from the Internet, including from the websites www.amazon.com and www.ebay.com;

vii) Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the ZO Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks, and

1    C.    An award of attorneys' fees, costs, and expenses.

2    D.    Such other and further relief as the Court deems just, equitable and proper.

3                              Respectfully submitted,

4                              CATES PETERSON LLP

5                              /s/  Amy Howse
6                              Mark D. Peterson (State Bar #126174)
                               Amy Howse (State Bar #252922)
7                              4100 Newport Place, Suite 230
                               Newport Beach, CA 92660
8                              Telephone: 949.724.1180
                               Facsimile: 949.724.1190
9
10                             Attorneys for Plaintiff ZO Skin Health, Inc.

11
12                             VORYS, SATER, SEYMOUR AND PEASE LLP

13                             /s/ Adam C. Sherman
                               Adam C. Sherman, Esq. (State Bar #224979)
14                             301 East Fourth Street
                               Suite 3500, Great American Tower
15                             Cincinnati, Ohio  45202
                               Phone:  (513) 723-4680
                               Facsimile:  (513) 852-7825
16                             acsherman@vorys.com

17                             Attorney for Plaintiff ZO Skin Health, Inc.

18

19                             **JURY DEMAND**

20           Plaintiff ZO Skin Health demands trial by jury of all issues so triable.

21

22                                 /s/  Amy Howse
23                                 Amy Howse, Esq.

24

25

26

27

28

- 19 -
COMPLAINT